United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLEBROWSR, INC., *et al.*, | No. C-12-6120 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** |
| TWITTER, INC., | |
| Defendant. | **(Docket No. 12)** |

## I. INTRODUCTION

Plaintiffs PeopleBrowsr, Inc. and PeopleBrowsr Pty., Ltd. (collectively, "PeopleBrowsr") brought a lawsuit in state court against Defendant Twitter, Inc. ("Twitter") for (1) intentional interference with contractual relations; (2) intentional interference with prospective economic advantage; (3) promissory estoppel; and (4) violations of California Business and Professions Code section 17200 and the following (the "UCL" claim). *See* Compl., Docket No. 1-1. PeopleBrowsr alleges various anticompetitive practices by Twitter in seeking to limit access to its data to a select subgroup of companies, excluding PeopleBrowsr. Following filing of the complaint in state court and issuance by that court of a TRO against Twitter, Twitter removed the case to this Court on the grounds that PeopleBrowsr's claim for violation of the UCL necessarily invokes federal law and is thus subject to federal subject matter jurisdiction.

The Court is now presented with two motions: (1) PeopleBrowsr's motion to remand; and (2) Twitter's motion to dismiss. For the reasons discussed herein, the Court **GRANTS** Peoplebrowsr's motion to remand. As a result, the Court does not reach Twitter's motion to dismiss.

## II. FACTUAL & PROCEDURAL BACKGROUND

Founded in 2006, Twitter is an online communications platform that lets users share information through "tweets" of 140 characters or less. Compl. ¶ 2. The "Twitter Big Data Analytics" market, in which PeopleBrowsr operates, consists of companies that use data mining techniques to derive insights from the flow of information generated on Twitter. *Id.* ¶ 3. For over four years, PeopleBrowsr has received every tweet posted on Twitter through what is referred to as the Twitter "Firehose" and paid Twitter over $1 million per year for access to these Tweets. *Id.* ¶ 4. PeopleBrowsr analyzes tweets to sell information to its clients, such as insight regarding consumer reactions to products and services as well as identification of the Twitter users who have the most influence in certain locations or communities. *Id.* ¶ 5. PeopleBrowsr's product depends on complete access through the Firehose. *Id.* ¶ 6. Peoplebrowsr invested millions of dollars and years of work in building its business based on access to the Firehose in reliance on Twitter's representations that it would maintain an "open ecosystem" for the use of its data. *Id.* ¶ 7.

After years of granting PeopleBrowsr access to the Firehose, Twitter now seeks to cut off its access while continuing to permit certain favored companies Firehose access, thereby give Twitter greater control over the Twitter Big Data Analytics market. *See id.* ¶¶ 9-12.

PeopleBrowsr filed its complaint in state court on November 27, 2012. On its face, the complaint only asserts state law claims. Among other state law claims, PeopleBrowsr's complaint includes a cause of action for violation of California's Unfair Competition Law ("UCL"), in which it asserts that Twitter (1) "committed unlawful acts . . . in violation of California common law"; and (2) "commit[ed] acts of unfair competition that significantly threaten or harm competition." *Id.* ¶¶ 154-55. After filing its complaint, PeopleBrowsr obtained a temporary restraining order (TRO) on November 28, 2012 prohibiting Twitter from turning off its access to the Firehose. *See* TRO App., Docket No. 1-2; TRO, Docket No. 1-8, at 96. Twitter subsequently removed the case to this Court on December 3, 2012 on the grounds that the "unfair acts" prong of PeopleBrowsr's UCL claim is in fact based on Section 2 of the Sherman Act, over which the Federal Courts have exclusive jurisdiction. *See* Notice of Removal, Docket No. 1. PeopleBrowsr now moves to remand on the

grounds that its "unfair acts" sub-claim is not necessarily based on the federal law, and thus there is no exclusive federal jurisdiction making removal improper. *See* Mot. to Remand, Docket No. 12.[1]

### III. DISCUSSION

A. Legal Standard

"In general, removal based on federal question jurisdiction is improper unless a federal claim appears on the face of a well-pleaded complaint." *Redwood Theatres, Inc. v. Festival Enters., Inc.*, 908 F.2d 477, 479 (9th Cir. 1990). "The burden of establishing jurisdiction falls on the party invoking the removal statute, which is strictly construed against removal." *Id.* (internal citations and quotation marks omitted). An exception to the rule against removal is "the artful pleading doctrine," which permits a court to "recharacterize a plaintiff's claims as federal if the particular conduct complained of is governed exclusively by federal law." *Id.* (alterations, quotation marks, and citations omitted). However, courts are to invoke this doctrine "only in *exceptional circumstances*, because doing so raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Id.* (emphasis in original) (quotation marks and citation omitted).

B. Federal Nature of Unfair Acts Sub-Claim

"The central question behind whether this Court may exercise removal jurisdiction over this case is whether PeopleBrowsr's UCL claim falls under the artful pleading doctrine, whereby the claim is necessarily federal in nature." *See* 14B Wright & Miller, Fed. Prac. & Proc. Juris. § 3722.1 (4th ed. 2012). California's unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Profs. Code § 17200. Courts have recognized that this language grants the law broad scope, and that "[t]he statutory language referring to 'any unlawful, unfair *or* fraudulent' practice . . . makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (emphasis in original). Given the potential for the law's broad

---

[1] PeopleBrowsr also argues that its unfair acts sub-claim, even if based on federal law, is paired with an unlawful acts sub-claim that is based on state law and that the complaint only seeks state law remedies. *See* Mot. to Remand 12-14, 19. As the Court finds removal based on the unfair acts sub-claim inappropriate regardless of the unlawful acts sub-claim or remedy sought, it need not separately consider these arguments.

1  application, however, the California Supreme Court in *Cel-Tech* spelled out a two-part test for
2  determining if an unfair acts UCL claim may proceed.  First, a court considers whether "specific
3  legislation provides a 'safe harbor' . . . ."  *Id.* at 182.  Such safe harbor legislation "must actually
4  'bar' the action or clearly permit the conduct."  *Id.* at 182-83.  Second, if no statute provides a "safe
5  harbor," a court must then determine if the conduct is "unfair," defined as conduct that either (1)
6  "threatens an incipient violation of an antitrust law"; (2) "violates the policy or spirit of one of those
7  laws because its effects are comparable to or the same as a violation of the law"; or (3) "otherwise
8  significantly threatens or harms competition."  *Id.* at 187.

9        Under the first step of the *Cel-Tech* tests, which asks whether legislation condones certain
10  conduct or bars an action against such conduct, courts look to both state and federal law.  For
11  example, in *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 370, 374-75 (2001), the court
12  determined that conduct specifically protected by the federal *Colgate* doctrine, which protects a
13  manufacturer's right to select with whom to do business and on what terms, could not be "unfair"
14  under the UCL.  The *Chavez* court did not reach the question of whether the conduct at issue fit into
15  the *Cel-Tech* definition of "unfair," but rather determined that the *Colgate* doctrine provided a "safe
16  harbor" for that conduct.  *See id.*  However, like *Cel-Tech*, it specifically limited its holding, noting
17  that

> We do not hold that in all circumstances an "unfair" business act or practice must violate an antitrust law to be actionable under the unfair competition law.  Instead we hold that conduct alleged to be "unfair" because it unreasonably restrains competition and harms consumers, such as the resale price maintenance agreement alleged here, is not "unfair" if the conduct is deemed reasonable and condoned under the antitrust laws.

22  *Id.* at 375.  While *Chavez* held that conduct explicitly condoned by federal antitrust law may not
23  constitute a violation of the unfair prong of the UCL, it did not address the issue of federal
24  jurisdiction.

25        Even assuming that the Sherman Act provided a "safe harbor" for the conduct alleged in the
26  complaint, such a "safe harbor" operates, in essence, as a federal defense to the "unfair act" claim.
27  Federal courts do not generally have jurisdiction over state law claims for which a defense based in
28  federal law exists.  *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S.*

4

*Cal.*, 463 U.S. 1, 10 (1983). "For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff*'s complaint establishes that the case 'arises under' federal law." *Id.* Thus, the first part of the two-step *Cel-Tech* test does not provide grounds for federal question jurisdiction.

The Court next turns to whether the second part of the two-step *Cel-Tech* test provides grounds for federal question jurisdiction. Twitter urges the Court to follow *National Credit Reporting Association, Inc. v. Experian Information Solutions*, No. C-04-1661 WHA, 2004 WL 1888769, at *1 (N.D. Cal. July 21, 2004), in which the court refused to remand a case with a UCL claim asserting unfair, unlawful, and deceptive business practices where "the complaint asserted violations of state and federal antitrust laws . . . ." The court emphasized that, "[a]s the master of its complaint, plaintiff could have avoided any issue of federal question and, instead, could have simply borrowed state antitrust laws," but "it did not." *Id.* at *2. In *National Credit Reporting Association*, the court relied heavily on the fact that the plaintiff's unlawful acts claim although framed in the context of a state UCL claim, was derived from violation of federal law, as stated in its complaint.

However, Twitter does not contest that the "unlawful" prong of PeopleBrowsr's UCL claim is based solely on state law, unlike in *National Credit*. Rather, it asserts that the "unfair" prong of PeopleBrowsr's UCL claim necessarily imports federal law, thus distinguishing the case at bar from *National Credit Reporting Association*. Moreover, unlike the plaintiff in *National Credit Reporting Association*, PeopleBrowsr does not specify any law in its complaint with respect to the "unfair" prong of its UCL claim. *See* Compl. ¶¶ 155-60. In fact, the only law it cites in its entire UCL claim is "California common law." *See id.* ¶ 154.

The second-step of the *Cel-Tech* analysis clearly permits a plaintiff to state a claim for violation of the unfair acts prong of the UCL entirely independent of any statutory basis including any federal statutory bases. This step recognizes that "unfair" means "conduct that threatens an *incipient* [as opposed to an actual] violation of an antitrust law, *or* violates the *policy* or *spirit* of one of those laws because its effects are comparable to or the same as a violation of the law, *or otherwise* significantly threatens or harms competition." 20 Cal. 4th at 187 (emphasis added). As *Cel-Tech* emphasized the fact that the UCL "is written in the disjunctive" and thus has a broad

scope, *id.* at 180 (quotation marks and citation omitted), the court's use of the disjunctive "or" in describing the alternative formulations of the "unfair" prong of the UCL also suggests an intent to confer broad scope to the definition of "unfair." Here, a violation of the unfair prong may be based on conduct that "significantly threatens or harms competition," regardless of whether it represents an actual or incipient violation of an antitrust law; it may also be based on a violation of the policy or spirit of one of those laws. *Id.* at 187.[2] Thus, a violation of the unfair prong of the UCL does *not* necessarily require establishing a violation of the Sherman Act. The artful pleading doctrine does not apply. PeopleBrowsr remains the master of its complaint.

As Twitter has not demonstrated that PeopleBrowsr's unfair acts UCL claim arises under federal law, remand is appropriate.

C.   Fees and Costs

Plaintiffs' reply brief seeks attorney fees and costs incurred as a result of the removal. Remand Reply 15. 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Attorney fees should be granted "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

Here, Twitter's removal lacked an objectively reasonable basis for seeking removal. It was based on a novel legal theory that an "unfair act" sub-claim asserting solely a state law claim based on facts that *could* also give rise to a federal claim is alone sufficient to confer on this Court federal

---

[2] The test for an unfair act under the UCL suggests that federal jurisdiction might not attach even if the unfair act is threatens an incipient violation of or violates the policy or spirit of a federal antitrust law. The question of what constitutes an "incipient violation" of a law or a violation of "the policy or spirit" of a law under section 17200 does not involve a pure question of federal law but is infused with the application of an element of state law (*e.g.*, having to define what constitutes an "incipient violation" or violation of the spirit or policy of the law). Indeed, the UCL permits a plaintiff to bring a UCL claim *before* a federal claim even accrues.

1    question jurisdiction. Yet, it cites to no cases that have so held.[3] In fact, the only case it cites
2    reaching an analogous result is an unpublished case based on the unlawful act prong, in which
3    federal law was explicitly invoked by the plaintiff. *See Credit Reporting Ass'n*, 2004 WL 1888768,
4    at *3.

5    Moreover, there do not appear to be any unusual circumstances militating against an award
6    of fees and costs. Twitter is a sophisticated litigant unlike the various *pro se* defendants for whom
7    this Court has denied fee requests in the past. *See, e.g.*, *Aurora Loan Services, LLC v. John*, No. C-
8    11-5585 EMC, 2012 WL 1132144, at *2 (N.D. Cal. Apr. 3, 2012); *Quantum Servicing Corp. v.
9    Castaneda*, No. C-11-2890 EMC, 2011 WL 3809926, at *2 (N.D. Cal. Aug. 29, 2011). The fact that
10   the removal shortly followed the state court's issuance of a TRO suggests that Twitter's decision to
11   remove this case was born out of a desire to find a more sympathetic forum.

12   Thus, the Court **GRANTS** PeopleBrowsr's request for Twitter to pay PeopleBrowsr's
13   reasonable costs and expenses, including attorney fees, incurred as a result of Twitter's improper
14   removal of this case and retains jurisdiction in this case solely to determine of the amount thereof.
15   The Court orders PeopleBrowsr to submit a brief of no longer than ten pages and supporting
16   affidavit by no later than fourteen days from the date of this order detailing its fees and costs
17   incurred in bringing this motion to remand, as well as a lodestar analysis for why its fees and costs
18   are reasonable. *See, e.g.*, *Albion Pac. Property Resources, LLC v. Seligman*, 329 F. Supp. 2d 1163
19   (N.D. Cal. 2004) (applying lodestar analysis to fee award under 28 U.S.C. § 1447(c)). Twitter may
20   file a responsive brief of no longer than ten pages by no later than fourteen (14) days after
21   PeopleBrowsr's filing. The matter will then be deemed submitted absent further order.

## V. CONCLUSION

23   In sum, PeopleBrowsr's unfair acts claim is not necessarily federal in character. Twitter has
24   failed to establish the artful pleading doctrine, rather than the well-pleaded complaint rule, applies to
25   this case. The Court **GRANTS** Peoplebrowsr's motion to remand and remands this case to state

---

[3] Indeed, it is not uncommon for alleged facts supporting state law claims, such as claims for employment discrimination, civil rights violations, or certain anti-competitive conduct, to give rise to both state as well as federal claims; yet federal question jurisdiction does not automatically obtain when the plaintiff asserts only state law claims.

court. The Court also **GRANTS** PeopleBrowsr's request for reasonable costs and expenses, including attorney fees, incurred as a result of Twitter's removal of this case.

This order disposes of Docket Nos. 12 and 13.

IT IS SO ORDERED.

Dated: March 6, 2013

_____
EDWARD M. CHEN
United States District Judge